IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANA LEE DEMBROW | : | CIVIL ACTION |
| | : | |
| v. | : | No. 22-4982 |
| | : | |
| SYNCHRONY BANK | : | |

## MEMORANDUM

**Chief Judge Juan R. Sánchez**                                                        **May 19, 2023**

Plaintiff Dana Lee Dembrow brings this suit against Defendant Synchrony Bank ("Synchrony"), claiming it opened a credit account in his name without authorization. Synchrony now moves to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Synchrony argues Dembrow's Amended Complaint is legally insufficient and that the pleadings show he knowingly opened the account. Because Dembrow has not stated a legal cause of action, the motion to dismiss will be granted. Dembrow will be granted leave to amend once more.

**BACKGROUND**

This case arises from Athene Alexsandria Giovannetti's desire to have cosmetic surgeries. Not. Removal Ex. 2, at 4 (Compl. ¶ 3), ECF No. 1-4.[1] The total cost for those surgeries was $19,900: a $500 deposit to reserve the appointment, a $3,200 deposit to use the surgical center, and a $16,200 balance to be paid following the surgeries. *Id.* at 4-5 (¶¶ 4-6). The surgeon, Dr. Michael Shafran, offers a credit program known as "Care Credit" in partnership with Synchrony Bank. *Id.* at 5 (¶ 6). Giovannetti could not pay the deposits, and she did not qualify for Care Credit

---

[1] Citations to the Notice of Removal exhibits use the ECF pagination, as multiple documents are contained in each exhibit.

1

because of her poor credit. *Id.* (¶¶ 7-9). Giovannetti thus asked Dembrow to pay the deposits and to take out the Care Credit loan.[2] *Id.* (¶ 11). She told him she wanted surgery "to use her physical appearance to become a highly paid social media celebrity," and promised to repay him. *Id.* (¶ 12).

Dembrow paid the advance deposits. Not. Removal Ex. 1, at 11 (Letter from Plaintiff to Defendant Synchrony Bank (July 23, 2022) (hereinafter cited to as "Letter dated July 23, 2022")), ECF No. 1-3. According to the unsigned draft Agreement between Giovannetti and Dembrow, he also agreed to make monthly payments of $1,350 for twelve months on the Care Credit account. Not. Removal Ex. 2, at 8 (Agreement 1), ECF No. 1-4. In return, Giovannetti promised to use earnings from her normal salary and social media presence to make monthly payments of $657 to Dembrow until she repaid the full amount. *Id.* at 6 (Compl. ¶¶ 15-16). She also promised to give him 20% of her online earnings after her loan was repaid. *Id.* (¶ 15).

In July 2022, Dembrow received a credit card statement from Synchrony Bank with a $16,200 balance, though he "did not apply for a loan or credit card." Not. Removal Ex. 1, at 5 (Am. Verified Compl. ¶¶ 22-23), ECF No. 1-3.[3] He "discovered that without [his] knowledge or consent, defendant Shafran had sent to defendant Synchrony Bank an unsigned application for credit." *Id.* at 7 (Am. Verified Compl. ¶ 30). And in August 2022, when Giovannetti was to begin repaying Dembrow, she refused. Not. Removal Ex. 2, at 6 (Compl. ¶¶ 16-18), ECF No. 1-4.

Though Dembrow paid Giovannetti's deposits and she agreed to repay him for his expenditures, it is unclear what type of arrangement they coordinated for the Care Credit loan.

---

[2] The two were in a romantic relationship. *See* Not. Removal Ex. 2, at 9 (Agreement 2), ECF No. 1-4.

[3] There have been two amendments to the Complaint, one in state court, and one in this Court. This memorandum uses the titles of the pleadings (in order, Complaint, Amended Verified Complaint, Amended Complaint) for ease of reference.

According to the initial Complaint, Giovannetti asked Dembrow to take out the loan. *Id.* at 5 (¶ 11). The initial Complaint further stated Giovannetti "is indebted to plaintiff for the liquidated sum of nineteen thousand nine hundred dollars ($19,900)." *Id.* at 6 (¶ 20). Dembrow also attached a document labeled "Memorialization of Agreement." *Id.* at 8. The Agreement states the $16,200 balance owed to Dr. Shafran "will be financed by the Care Credit Agency, which will extend an interest-free loan." *Id.* It does not state whether Giovannetti, Dembrow, or both would take out the loan. *Id*. The Agreement is labeled with a handwritten note at the top reading "FINAL DRAFT," and it is unsigned. *Id.*

Dembrow then filed the "Amended Verified Complaint," which states that Giovannetti asked Dembrow "to help her obtain" the Care Credit loan. Not. Removal Ex. 1, at 4 (Am. Verified Compl. ¶ 11), ECF No. 1-3. According to a letter Dembrow sent to Synchrony in July 2022, he helped Giovannetti by paying the deposits and calculating the monthly payment amount on an interest-free, 12-month loan of $16,200. *Id.* at 11 (Letter dated July 23, 2022). Though he provided his identification information to Dr. Shafran's office, he "assumed it was necessary . . . in order to access and discuss Ms. Giovannetti's account." *Id.* And though he restates that she "asked me to assist with her eligibility for a Care Credit loan and facilitation of her payments," he "never provided you [Synchrony] or Dr. Shafran with my signature to authorize opening of any Care Credit account in my sole name, did not expect that to occur, and have never even been asked if I wanted an account in my name. I don't." *Id.* Accordingly, he "was shocked to have a credit card mailed to me in my name . . . and even more shocked to learn . . . that apparently no credit card was sent to Ms. Giovannetti." *Id.*

On September 20, 2022, Dembrow initiated a civil suit against Giovannetti in the Bucks County Court of Common Pleas, alleging breach of contract and grand larceny under false

pretenses. *See* Not. Removal Ex. 2, at 4-7 (Compl.) ECF No. 1-4. On October 18, 2022, he filed the Amended Verified Complaint in the same court, which added Dr. Shafran and Synchrony Bank as defendants. *See* Not. Removal Ex. 1, at 2-8 (Am. Verified Compl.), ECF No. 1-3. The Amended Verified Complaint added claims for violation of federal lending requirements against Synchrony and for libel against Dr. Shafran. *See id.* On December 14, 2022, Synchrony filed a notice of removal to federal court. Eight days later, Synchrony filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). This Court granted Synchrony's motion on February 23, 2023, and gave Dembrow leave to file an amended complaint. Order, ECF No. 10.

On March 21, 2023, Dembrow filed his Amended Complaint. He incorporated the prior pleadings by reference, but only named Synchrony Bank as a defendant. Am. Compl. ¶ 1, ECF No. 11. The Amended Complaint did not list any new counts.[4] *See id.* Synchrony filed a second Motion to Dismiss on April 4, 2023. It is now fully briefed and ripe for review.

**STANDARD OF REVIEW**

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In evaluating a Rule 12(b)(6) motion, a district court must separate the legal and factual matter elements of the plaintiff's claims. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court "must accept all factual

---

[4] Because the prior claim for violation of federal law was dismissed and Dembrow did not allege any new counts, the Court no longer has federal question jurisdiction. However, the Court may continue to exercise supplemental jurisdiction over any state law claims at its discretion. *See* 28 U.S.C. § 1367(c)(3).

allegations . . . as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether [the] plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).

**DISCUSSION**

Synchrony moves to dismiss Dembrow's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), arguing the Amended Complaint is "legally insufficient" because it "only asserts a vague claim that Synchrony breached a duty owed to him." Mem. Law Supp. Mot. Dismiss 4, ECF No. 12-1. Based on Dembrow's reference to Synchrony's "duty . . . to seek and obtain from plaintiff his authorization" to open an account, Am. Compl. ¶ 2, ECF No. 11, Synchrony has inferred claims for negligence and breach of contract. Mem. Law Supp. Mot. Dismiss 4, ECF No. 12-1. It argues Dembrow has not pled either cause of action. *Id.* at 4-7. Dembrow's response does not address these legal arguments. *See generally* Opp. Mot. Dismiss, ECF No. 13. It focuses instead on Synchrony's arguments regarding the factual allegations. *Id.*

The Court construes pro se pleadings liberally and "will apply the applicable law, irrespective of whether [Dembrow] has mentioned it by name." *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003); *accord Sun v. Mortg. Rsch. Ctr., LLC*, 1:21-cv-02108, 2022 WL 4486978, at *3 (M.D. Pa. Sept. 27, 2022) ("A party does not need to plead specific legal theories in the complaint, as long as the opposing party receives notice as to what is at issue in the lawsuit." (quoting *Elec. Constr. & Maint. Co. v. Maeda Pac. Corp.*, 764 F.2d 619, 622 (9th Cir. 1985)). Accordingly, the Court considers "whether the facts alleged state a claim under *any legal theory*, not just those explicitly named in the complaint." *Sun*, 2022 WL 4486978, at *3. Dembrow, however, has not named *any* legal causes of action in the Amended Complaint. Instead, his claim is for "opening an account without authorization." Am. Compl., ECF No. 11. Because Synchrony

5

does not have notice of what legal causes of action are at issue, the motion to dismiss will be granted.

Synchrony also asks the Court to deny Dembrow leave to amend again, arguing it would be futile because the pleadings "contradict themselves." Mem. Law Supp. Mot. Dismiss 7, ECF No. 12-1. And, according to Synchrony, the pleadings "conclusively establish that Plaintiff voluntarily and knowingly procured the credit card." *Id.* at 1. "The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Nevertheless, a district court may deny leave to amend when there is undue delay, bad faith, dilatory motive, futility, or prejudice. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (citation omitted). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Id.* In considering futility, a district court applies the same legal standard as to a motion to dismiss under Rule 12(b)(6). *Id.*

Accepting all factual allegations as true and construing the pleadings in the light most favorable to Dembrow, *see Mayer*, 605 F.3d at 229, the Court does not agree with Synchrony's assessment. According to Synchrony, "Plaintiff and Giovanetti [sic] entered into a contract wherein Plaintiff would. . . obtain a credit card[.]" Mem. Law Supp. Mot. Dismiss 2, ECF No. 12-1.[5] But it is unclear what the actual agreement between them was. The Agreement Dembrow attached to the initial Complaint is unsigned, and it does not state who would open the line of

---

[5] Synchrony also argues Dembrow contradicted himself in his response to its motion, as he states that he only intended to be a guarantor for the loan, not the sole borrower. Opp. Mot. Dismiss 1, ECF No. 13. As acknowledged by Synchrony, the Court may not consider these new factual allegations under the Rule 12(b)(6) standard. *See Mayer*, 605 F.3d at 229 (limiting consideration to the complaint, exhibits attached thereto, matters of public record, and undisputedly authentic documents where appropriate). Additionally, it is not necessarily contradictory to state that Dembrow (1) intended to be a guarantor and (2) never applied for this credit card. Intention to take an action is not the equivalent of taking the action.

credit. Even if Dembrow intended to take out the card, the pleadings indicate he did not intend to do so in his sole name. Because Dembrow did not "knowingly and voluntarily" take out the credit card in the way it was processed by Synchrony, amendment would not be futile. Therefore, Synchrony's Motion to Dismiss will be granted, but Dembrow will be granted leave to amend a second time.

    An appropriate Order follows.

                                        BY THE COURT:

                                        /s/ Juan R. Sánchez
                                        Juan R. Sánchez, C.J.